

**SO ORDERED.**

**SIGNED this 25 day of August, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| **NATIONAL GAS DISTRIBUTORS, LLC** | 06-00166-8-ATS |
| DEBTOR | |
| | |
| **RICHARD M. HUTSON, II**, Trustee for National Gas Distributors, LLC, f/k/a Paul Lawing, Jr., LLC, | ADVERSARY PROCEEDING NO. |
| Plaintiff | S-06-00086-8-AP |
| v. | |
| **UNITED STATES OF AMERICA, DEPARTMENT OF THE ARMY,** | |
| Defendant. | |

**ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR DEFENDANT**

The matter before the court in this adversary proceeding brought by Richard M. Hutson, II, chapter 11 trustee for National Gas Distributors, LLC, to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B) and 550(a)(1), is the motion filed by the defendant, United States of America, Department of the Army ("U.S. Army") for summary judgment. This adversary proceeding is one of a series of related adversary proceedings brought by

the trustee against former customers of the debtor to avoid transfers arising from the sale of natural gas by the debtor at what the trustee contends were below market prices. Ten of the defendants filed motions for summary judgment, and because the motions involve the same or similar issues, the motions were considered together at a hearing in Raleigh, North Carolina on July 13, 2009.

**Jurisdiction**

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(H), which this court may hear and determine.

**Summary Judgment Standard**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and inferences to be drawn from the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962) (per curiam). Summary judgment is not a "disfavored procedural shortcut," but an important mechanism for filtering out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327, 106 S. Ct. at 2555. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Summary judgment should not be granted "unless the moving party has

established his right to a judgment with such clarity as to leave no room for controversy." Portis v. Folk Constr. Co., 694 F.2d 520, 522 (8th Cir. 1982) (internal quotations omitted).

**Background**

National Gas Distributors, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on January 20, 2006, and, at the request of the debtor's state court receiver, Mr. Hutson was appointed chapter 11 trustee. Prior to its bankruptcy, National Gas was in the business of purchasing and distributing natural gas in North Carolina and various other states.

The trustee filed complaints against more than 20 former customers of National Gas, including U.S. Army, to avoid, pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (a)(1)(B), transfers made by the debtor, and to recover those transfers from the defendants pursuant to § 550(a)(1). The gist of the trustee's complaints is that National Gas, as part of a fraudulent scheme, sold natural gas to some of its customers, including U.S. Army, at below market prices. The trustee is attempting to recover the difference between the market price of each sale and the below market price at the time of each sale.

The trustee alleges that the sales were made by National Gas with the intent to hinder, delay and defraud creditors. He contends that the fraud included below-market sales, false invoices, false reporting of invoices to the debtor's secured lenders, and obtaining loans on the basis of false information. According to the trustee, those alleged facts show actual fraud and support avoidance of the transfers pursuant to § 548(a)(1)(A).

The trustee also maintains that at the time of the transfers, National Gas was insolvent and, because the sales were made at a price below market value, National Gas did not receive reasonably

equivalent value for the natural gas that it sold. Accordingly, the trustee argues that the transfers were constructively fraudulent and should be avoided under § 548(a)(1)(B).

**Trustee's Claim Against U.S. Army and U.S. Army's Defense and Counterclaim**

Specifically, with respect to the trustee's claim to recover fraudulent transfers made to U.S. Army, it is alleged that within one year prior to the petition date, U.S. Army purchased natural gas from National Gas at below market prices resulting in an aggregate loss to National Gas of approximately $1,059,667. The U.S. Army has filed a counterclaim to recover in excess of $2,000,000 for the failure of National Gas to meet its obligation to provide natural gas in December 2005.

According to U.S. Army, as part of its comprehensive energy price hedging program, it purchased natural gas from National Gas for its military facility at Fort Bragg, North Carolina. The purchases were made in long term "strip" purchases and short term "spot" purchases. In July 2004, U.S. Army entered into a strip purchase with National Gas that covered the months of January through September 2005, and in March 2005 it entered into a strip purchase with National Gas to cover the months of October 2005 through September 2006. U.S. Army's spot agreements with National Gas covered all of the months of February to December 2005. All of the purchases were for a fixed price and a fixed quantity of natural gas. The purchase agreements, with the exception of the spot purchases for the months of February (delivery orders # 3 and #4), March (delivery order #6), October (delivery orders #12 and 13), and November (delivery orders #14 and #15), were forward transactions in the sense that they were to be performed more than two days after the contract was made. The amount of natural gas delivered for the spot purchases for the months of May, September, and November 2005, however, were not the same as the amount stated in the

contract. Specifically, in May the amount of dekatherms contracted for was 78,000, but the amount delivered was 80,000; in September the amount contracted for was 49,800, but the amount delivered was 44,377; and in November, for one of the spot contracts, the amount contracted for on November 23, 2005, was 30,000, while the amount delivered was 26,652.

U.S. Army and the other defendants that have moved for summary judgment contend that their agreements to purchase natural gas from the debtor are "swap agreements" as defined by § 101(53B) of the Bankruptcy Code, which are protected from avoidance by Bankruptcy Code §§ 546(g), 548(c) and 548(d)(2)(D). Alternatively, U.S. Army also argues that the transfers cannot be avoided under § 548(a)(1)(A) because the trustee cannot establish that the debtor had an intent to defraud when it contracted with U.S. Army, and that the transfers cannot be avoided under § 548(a)(1)(B) because the transfers were made for reasonable equivalent values.

The trustee contends that he is entitled to summary judgment with respect to the swap agreement defense, and argues that U.S. Army's summary judgment motion with respect to its alternative defenses should be denied because there remain genuine issues of material fact for trial.

**Discussion and Conclusion**

The court considered the swap agreement defense in its Order Denying Defendant's Motion for Summary Judgment and Granting Partial Summary Judgment for Trustee, entered on this date in Hutson v. M.J. Soffe LLC (In re National Gas Distributors), Adv. Pro. No. S-06-00081-8-AP (Bankr. E.D.N.C.), and held that the agreements between Soffe and the debtor were not commodity forward agreements and therefore not swap agreements. The court based its decision on its construction of the required elements articulated by the Court of Appeals for the Fourth Circuit in In re National Gas Distributors, LLC, 556 F.3d 247 (4th Cir. 2009), as well as the court's

understanding of what the Bankruptcy Code requires. The court's analysis in Soffe is applicable in this proceeding.

For an agreement to be a commodity forward agreement there are, the appellate court said, "certain nonexclusive elements that the statutory language appears to require." 556 F.3d at 259. The essence of each of the elements is:

> First, the subject of a commodity forward agreement must be a commodity. . . .
>
> Second, a forward commodity contract, in being "forward," must require a payment for the commodity at a price fixed at the time of contracting for delivery more than two days after the date the contract is entered into. . . .
>
> Third, as a forward agreement in relation to a commodity, in addition to the price element, the quantity and time elements must be fixed at the time of contracting. . . .
>
> Finally, while the broad class of "swap agreements" includes contracts that are readily assignable and therefore tradable, "swap agreements" also include forward contracts, which are not necessarily assignable. . . . It is undoubtably true that Congress . . . require[s] a relationship between a commodity forward agreement and the financial markets. But this relationship need not be defined by trading in a market or on an exchange . . . .

National Gas, 556 F.3d at 259-260.

The agreements in Soffe were for the defendant's requirements, and no quantity was ever fixed in advance as required by National Gas. In Soffe and in six of the related proceedings, the court entered summary judgment in favor of the trustee because the purchase agreements did not specify a fixed quantity of natural gas to be purchased. In this proceeding, however, the price and quantities were fixed in the strip and spot contracts. There are minor discrepancies as to the amount natural gas contracted for and the amount of natural gas actually delivered, but that does not change the fact that there were contracts for fixed quantities.

6

Furthermore, with the exception of the spot purchases in 2005 for February (delivery orders #3 and #4), March (delivery order #6), October (delivery orders #12 and #13), and November (delivery orders #14 and #15), the contracts also meet all of the other requirements stated in National Gas. All of the transactions were part of U.S. Army's energy cost hedging program. The problem with the spot purchases for February, March, October and November is that they may not be forward transactions because the contracts were entered into after delivery was to be made. U.S. Army is entitled to summary judgment with respect to its swap agreement defense as to all transactions except the spot transactions in February (delivery orders #3 and #4), March (delivery order #6), October (delivery orders #12 and #13), and November (delivery orders #14 and #15). The swap defense is a complete defense to the trustee's avoidance claims under both § 548(a)(1)(A) and § 548(a)(1)(B).

U.S. Army also seeks summary judgment on the trustee's "actual intent to hinder, delay, or defraud" cause of action under § 548(a)(1)(A). This cause of action already has been the subject of a motion to dismiss, which was denied. The court rejected the arguments of Purolator Products NA, LLC and other defendants, including U.S. Army, that there was no allegation that the actual natural gas sales, as opposed to the fraudulent reporting of sales prices to the debtor's bank, were accomplished with the actual intent to hinder, delay or defraud creditors. The court held in Hutson v. Purolator Products NA, LLC (In re National Gas Distributors, LLC), Adv. Pro. No. S-06-00122-8-AP (Bankr. E.D.N.C. Dec. 6, 2006) (the opinion on which the court relied in denying U.S. Army's motion to dismiss) that the trustee alleged, in sufficient substance and detail, that the sales were a part of the debtor's broad fraudulent scheme. The trustee, in response to the motion for summary

judgment, has proffered adequate evidence of the debtor's fraudulent scheme, and U.S. Army's motion for summary judgment on that cause of action will be denied.

Finally, U.S. Army argues that it is entitled to summary judgment with respect to the trustee's claims that the transfers are avoidable under § 548(a)(1)(B). That section provides generally that the trustee may avoid any transfer of an interest or obligation incurred by the debtor within one year before the date of the filing of the petition if, among other requirements, the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for the transfer or obligation and the transfer was made when the debtor was insolvent or the debtor became insolvent as a result. The trustee contends that there are genuine issues of material fact relating to whether the transfers were for less than a reasonably equivalent value, and whether the debtor at the time of the transfers was insolvent. U.S. Army maintains that the price it paid for the natural gas it purchased is very close to the market price, but there remains a conflict and the motion for summary judgment on that issue will be denied.

Accordingly, U.S. Army's motion for summary judgment with respect to the swap agreement defense is **ALLOWED** as to all purchases except the spot purchases for February (delivery orders #3 and #4), March (delivery order #6), October (delivery orders #12 and #13), and November (delivery orders #14 and #15). As to the other issues, U.S. Army's motion for summary judgment is **DENIED**. The trustee's request for summary judgment is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**